# Exhibit C

# FAX COVER SHEET

| | |
|---|---|
| TO | |
| COMPANY | |
| FAX NUMBER | 18777886305 |
| FROM | Case Processors 1 |
| DATE | 1/24/2025 1:02:30 PM EST |
| RE | Hudechek, Cyril - Assignment form |

## COVER MESSAGE

See attached. Please fax confirm assignment has been added to policy to 516-908-4493.

# ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

Security Life of Denver Insurance Company (SLD), Denver, CO
Midwestern United Life Insurance Company (MULIC), Indianapolis, IN
*SLD and MULIC ("SLD/MULIC") affiliated*
ReliaStar Life Insurance Company (RLIC), Minneapolis, MN
ReliaStar Life Insurance Company of New York (RLNY), Woodbury, NY
*RLIC and RLNY ("RLSTR") affiliated*
Venerable Insurance and Annuity Company (Venerable), Des Moines, IA
(the "Company")

Customer Service, 2000 21st Ave., NW, Minot, ND 58703; Completed forms can be emailed to: liferequest@voya.com

**SLD/MULIC, RLSTR and Venerable may provide administrative services to each other, but are otherwise unaffiliated. All contractual obligations under each insurance policy or contract are the sole responsibility of the issuing insurance company.**

**NOTICE: No assignment shall be recognized by the Insurer unless and until it is filed at Customer Service. The Insurer shall not be held responsible for the validity of any assignment.**

**Reminder to Producer regarding New York Issued Contracts:** Before making any recommendation, you must have adequate knowledge of the transaction you're recommending and provide your client with the relevant features of the contract and potential consequences of the transaction, both favorable and unfavorable. If you have any questions about the contract or transaction prior to making a recommendation, contact the Company.

## ASSIGNOR & ASSIGNEE INFORMATION *(Print Owner/Assignor and Assignee information. For multiple owners, additional space is provided on page 2.)*

Policy Number 1689869

Owner/Assignor Name *(First)* Cyril *(Middle Initial)* M *(Last)* Hudechek

Address 10121 Nimphie Road City Fenton State MI ZIP 48430

Insured Name *(First)* Cyril *(Middle Initial)* M *(Last)* Hudechek

Assignee Name *(First)* Abacus Life, Inc. *(Middle Initial)* ____ *(Last)* ____

Birth Date ____ SSN/TIN 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 Phone (____) ____

Address 2101 Park Center Drive City Orlando State FL ZIP 32835

For value received, the undersigned Assignor(s) hereby assign, transfer, and set over to the Assignee and to the executors, administrators, successors, and assigns of Assignee, the above policy and all claims, options, privileges, rights, titles, and interest therein, subject to all the terms and conditions of the policy and any outstanding liens which the Insurer may have against the policy. Assignors jointly and severally agree, and Assignee by the acceptance of this agreement agrees:

1. This assignment is made and the policy is held as collateral security for any and all liabilities of the Assignors, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the Assignors and Assignee (all of which liabilities are herein called "Liabilities").
2. Without limiting the scope of this assignment, Assignee shall have the sole right to:
   (a) collect the net proceeds of the policy from Insurer when it becomes a claim by death or maturity.
   (b) surrender the policy and receive the surrender value.
   (c) obtain loans or advances on the policy from Insurer.
   (d) collect all distributions or shares of surplus, dividends, deposits, and additions to the policy existing now or that are hereafter made or apportioned, and to exercise all options contained in the policy with respect thereto, provided that unless and until Assignee specifically notifies Insurer in writing to the contrary, the distributions or shares of surplus, dividends, deposits, and additions shall continue on the plan in force at the time of this assignment.
   (e) exercise non-forfeiture provisions.
3. The following rights, so long as the policy is not surrendered, are reserved to Assignor and are excluded from this assignment:
   (a) the right to collect from Insurer any disability benefits payable in cash that do not reduce the amount of insurance.
   (b) the right to designate and change the beneficiary.
   (c) the right to elect an optional mode of settlement.
4. Assignee agrees:
   (a) that any balance of sums received from Insurer remaining after payment of the then existing liabilities, matured or not, shall be paid by Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed.
   (b) not to exercise either the right to surrender the policy or (except for the purpose of paying premiums) the right to obtain policy loans from Insurer, until there has been a default in payment of any of the Liabilities or a failure to pay any premium when due, nor until 20 days after Assignee shall have mailed by first-class mail, to Assignors at the addresses last known to Assignee, notice of intention to exercise such right.
   (c) upon Assignor's request, to forward without reasonable delay to Insurer the policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.
5. Assignee shall be under no obligation to pay any premium, or principal or interest of any loans or advances on the policy whether or not obtained by Assignee, or any other charges on the policy, but any such amounts paid by Assignee from Assignee's own funds shall become part of the Liabilities, shall be effective immediately, and shall draw interest at a rate fixed by Assignee from time to time.
6. The exercise of any right, option, privilege, or power given herein to Assignee shall be at the option of the Assignee, and [except as restricted by item 4 (b)] the Assignee may exercise any such right, option, privilege, or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by Assignors, or any of them.

7. Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities or may grant extensions, renewals, or indulgences with respect to the Liabilities. Assignee may apply to the Liabilities in such order as Assignee shall determine, the proceeds of the policy hereby assigned or any amount received on account of the policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.
8. Insurer is authorized to recognize Assignee's claims to rights hereunder without investigating the reason for any action taken by Assignee, the validity or amount of the Liabilities, the existence of any default, the giving of any notice required under item 4(b) or otherwise, or the application to be made by Assignee of any amounts paid to Assignee. The sole signature of Assignee shall be sufficient for the exercise of any rights under the policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release of Insurer to the extent thereof. Checks for any of the sums payable under the policy and assigned herein, may be drawn to the exclusive order of Assignee if, when, and in such amounts as may be requested by Assignee.
9. Assignors warrant and represent that no proceedings in bankruptcy are pending against any of them and that none of their property is subject to any assignment for the benefit of creditors.
10. In the event of conflict between this Assignment and the note or other evidence of the Liabilities, with respect to the policy or rights of collateral security in the policy, the provisions of this assignment shall prevail.

**Question 11 is required with Variable Universal Life policies only. Failing to provide this information will result in a delay in processing.**

11. This election applies to the right to: (a) transfer policy values among the available investment divisions; (b) change contribution allocations; and (c) make changes to instructions, initiate, or cease participation in the Dollar Cost Averaging and Automatic Rebalancing programs. If Assignee is selected, the Assignee and Assignor must complete and return a Third Party Telephone Transfer Authorization (Order #131454) to Insurer.

☑ Owner/Assignor may direct policy investment decisions without Assignee consent.

☐ Assignee may direct policy investment decisions without Owner/Assignor consent.

## TAX STATUS *(This section only applies if your policy is considered a Modified Endowment Contract (MEC).)*

Based on Internal Revenue Code Section 72(e), because you have fully assigned your interest in your modified endowment contract, the value of the contract will be treated as an amount received. As a result, any earnings in the contract lose their tax-deferred status. You will receive an IRS Form 1099-R reporting the earnings to date as taxable income for the year the contract becomes subject to assignment. You will continue to receive a Form 1099-R each year the assignment remains in force reporting any additional earnings. If you are under age 59 1/2 you may be subject to a 10% penalty imposed by the IRS unless an exception applies.

This information is provided as a general guidance. It is not intended to be legal or tax advice. **You should contact your legal and/or tax advisor regarding your personal facts and circumstances and the applicability of the issues described herein.**

## AUTHORIZATION *(If signing for an entity, the undersigned represents that he/she has authority to bind the entity.)*

**Note to Owner regarding New York Issued Contracts:** If your producer is providing a recommendation regarding this transaction, the producer is required to provide you with the relevant features of the contract and potential consequences of the transaction, both favorable and unfavorable.

Owner/Assignor Signature Signed by: Cyril M. Hudecheck 0B7A5E6206B1414 Date 1/6/2025

Owner/Assignor Title [1] *(if the owner is a trust, partnership or corporation)* ______

Assignee Title *(Print full name of individual or entity; if an entity, attach corporate resolution or similar document listing authorized signatories.)*
Abacus Life, Inc.

Assignee Signature *(if an entity, also print title of authorized signor)* [signature], Co-president Scott Kirby Date 1/23/2025

Irrevocable Beneficiary Signature *(if any)* ______ Date ______

Witness Signature *(only required with beneficiary signature)* ______ Date ______

[1] *If the owner is a trust, partnership or corporation, the signature and title of the trustee, partner, corporate representative or authorized corporate representative are required.*

**For policies with multiple owners, provide additional owner information and signatures below.**

Owner/Assignor Name ______

Address ______ City ______ State ______ ZIP ______

Owner/Assignor Signature ______ Date ______

Owner/Assignor Name ______

Address ______ City ______ State ______ ZIP ______

Owner/Assignor Signature ______ Date ______

## CUSTOMER SERVICE USE ONLY

Filed By ______ Date ______

ABACUS SETTLEMENTS, LLC
2101 Park Center Drive
Orlando, FL 32835

This matter having come before the membership of Abacus Settlements, LLC, a Limited Liability Company organized, existing and in good standing under the laws of the State of Florida, with its principal place of business located at 2101 Park Center Drive, Orlando, FL 32835, (the "Company"), by action with or without notice or meeting upon written consent if and as otherwise allowed pursuant to the laws and rules controlling governance of the Company:

FURTHER RESOLVED, that Samantha Butcher, Matthew Ganovsky, Sean McNealy, Scott Kirby, are authorized individually , to sign all documents pertaining to the viatical and life settlements in which Abacus Settlements, LLC is engaged, and make representations and warranties on behalf Abacus Settlements, LLC and sign any and all documents, contracts, consents, waivers, disclosures, acknowledgements, assignments, under the terms and conditions and at such time and place as deemed to be appropriate in connection with the business of the Company;

Any act taken or done by any representative or agent of the Company to facilitate the matters contemplated by the foregoing are hereby ratified and approved, and the representatives of the Company are authorized to take and to do such further acts and deeds, and to execute and deliver for and in the name of the Company, such other documents, papers and instruments as are necessary, appropriate, advisable or required in order to effectuate the purpose and intent hereof and the taking of any such acts and deeds, and the execution and delivery of any such documents, papers and instruments is hereby ratified and approved.

IN WITNESS WHEREOF, the undersigned do hereby represent, warrant, certify and attest that the foregoing actions, decisions and ratifications have been and hereby are duly authorized and approved by and in the name of the Company effective as of this 31st day of October 2016

This Authorization shall be executed by not less than two representatives of the Company, one of which shall be the Managing Partner or Managing Member, or by such larger number as may be required under the Company's governing documents or as otherwise required by applicable law. [In cases where the Company has only one management representative authorized to act on behalf of the Company, please indicate that fact below.]

x
Print Name: Scott Kirby Title: Member

x
Print Name: Matthew Ganovsky Title: Member
Signature:

x
Print Name: Sean McNealy Title: Member

x Title: Director of Operations
Print Name: Samantha Butcher